(October 16, 1911.)

## FIRST NATIONAL BANK OF AMERICAN FALLS, a Corporation, Respondent, v. AMERICAN FALLS CANAL AND POWER COMPANY, a Corporation, Appellant.

[118 Pac. 668.]

AGENT—AUTHORITY—ACTION OF PRINCIPAL.

(Syllabus by the court.)

1.   Evidence in this case examined; *held,* the evidence fully supports the findings and judgment.

2.   Where D. is engaged in certain construction work upon a canal of the A. F. C. & P. Co., and abandons such work, and the laborers employed by D. threaten to quit work, and the engineer of the A. F. C. & P. Co., who is in general charge of such construction work, places N., who had been foreman for D., in charge of the work which had been abandoned by D., and directs N. to employ labor and continue the work and to purchase supplies and issue time checks in payment of labor upon said canal, and the general manager of the business of the A. F. C. & P. Co. also authorizes N. to purchase provisions and to finish the work and that the labor would be provided for, and directs N. to keep the time and track of the labor and issue checks for the amount due, and the A. F. C. & P. Co., through its bookkeeper who is in charge of its office, directs that the labor will be paid for, and no other persons are shown to have been acting for the A. F. C. & P. Co. in connection with said work other than the engineer, general manager and bookkeeper, and the labor performed is accepted and appropriated by the A. F. C. & P. Co., the evidence is sufficient to support findings and judgment in favor of the bank, which has pur-

chased the time checks issued in the name of D. by F. L. N., acting for and on behalf of said A. F. C. & P. Co.

3. Where A. F. C. & P. Co. is engaged in the construction of a canal, and a contract has been let to one D. for the construction of a portion of said canal, and D. abandons such work and C., the engineer of the A. F. C. & P. Co., and in charge of the construction of said canal, authorizes N. to take charge and continue such work, and that the labor performed would be paid, and the general manager of the A. F. C. & P. Co. also agrees that the labor will be paid, and there is no evidence to show that such persons had no authority to make such statements or agreements, and there is no evidence that such persons acted outside of their authority, and the company in no way repudiates the acts of such persons, and the company accepts the labor and work done under such employment, and the bank purchases time checks issued by N. as evidences of the work done and the amount due, and such purchases are made by the bank in good faith and in the ordinary course of business and in the same manner as other time checks had previously been issued, the A. F. C. & P. Co. is estopped from denying the authority of the engineer, general manager and bookkeeper in authorizing the employment of labor and agreeing to pay for the same.

4. It cannot be urged for the first time in this court that the findings and judgment should be reversed because there is a variance between the evidence and the allegations of the complaint, in that the allegations of the complaint contain two causes of action.

APPEAL from the Sixth Judicial District for Bingham County. Hon. J. M. Stevens, Judge.

An action to recover a debt for labor done upon a canal. Judgment for plaintiff. Defendant appeals. *Affirmed.*

William A. Lee, and W. H. Wilkins, for Appellant, cite no authorities on points decided.

Ira E. Barber, and L. E. Sigmond, for Respondent.

Where different causes of action are alleged and are not inconsistent, the one with the other, the plaintiff may recover on either. (*Darknell v. Coeur d'Alene & St. Joe Trans. Co.*, 18 Ida. 61, 108 Pac. 537, 538.)

"If a corporation clothes an officer or agent with apparent authority to act for it in a particular matter, it will be es-

topped to deny such authority as against persons dealing with him in good faith and in ignorance of limitations upon his authority.'' (*Eells v. Gray Bros. etc. Co.,* 13 Cal. App. 33, 108 Pac. 735; *Rowley v. Stack-Gibbs Lumber Co.,* 19 Ida. 107, 112 Pac. 1041.)

A voluntary acceptance of the benefit of a transaction is equivalent to consent to all the obligations arising from it so far as the facts are known, or ought to be known, to the persons accepting. (*Northern Assurance Co. v. Stout* (Cal.), 117 Pac. 617, 622; citing *Simons v. Bedell,* 122 Cal. 341, 68 Am. St. 35, 55 Pac. 3.)

STEWART, C. J.—This is an action to recover for labor alleged to have been performed by different persons upon a canal under construction by the appellant. The complaint consists of twenty-eight separate causes of action. In the first cause of action, after alleging the corporate character of the plaintiff and defendant, it is alleged that between the 1st day of August, 1908, and the 15th day of September, 1908, one R. W. Martin, at the request of the defendant, performed labor for the defendant upon its canals, ditches and irrigation works, to the value of $33, and for which the defendant agreed to pay, and that the defendant was short of funds, and to avoid mechanics' liens and encumbrances upon its canals, requested the plaintiff to pay off and discharge said claim, which the plaintiff did, at the instance and request of the defendant, and to have the same transferred and assigned to the plaintiff; that such claim has not been paid, and is due, etc. Each of the other twenty-seven causes of action are the same, except as to the name of the person performing the labor, the amount due and the dates between which such labor was performed.

The appellant made answer to each cause of action, and denies that Martin performed labor upon the defendant's canal, ditches or irrigation works, or ever performed any work at defendant's request, and denies that it ever agreed to pay Martin for any labor, and denies that it requested the plain-

tiff to pay off or discharge said debt, and denies that the plaintiff, at its instance or request, or at all, paid said debt, and denies that said debt was assigned to the plaintiff, and denies any sum due. The same answer was made to each cause of action.

This case was tried to the court and findings of fact were made in favor of the plaintiff, in accordance with the allegations of the complaint, and judgment was rendered in favor of respondent for the amount prayed for in the complaint. A motion for a new trial was made and overruled, and this appeal is from the judgment and the order overruling the motion for a new trial.

The appellant first contends that the evidence is insufficient to support the findings and judgment, and specifies seven different particulars in which it is claimed such evidence is insufficient. These several reasons will be considered in discussing the evidence as a whole. In the first place, there is no substantial conflict in the evidence. The only witness called at the trial on behalf of the appellant was Nora M. Jones, who testified that she was in charge of the Blackfoot branch of the office of the defendant through which the Idaho business of the defendant company was conducted during the year 1908, and that the only other person in the office was the secretary, A. H. Thompson, and that when matters were presented to her she either acted upon them or referred them to Mr. Thompson, and that funds were paid out only through the order of the secretary, and if a person got any funds, he got it through the office through the order of the secretary.

The evidence introduced by the plaintiff, and which is uncontradicted, shows that one Andrew Duncan had a contract with the defendant for certain construction work on the canal of the defendant, and on or about the 18th day of July, 1908, abandoned his contract, and that the men threatened to quit their work, and that F. L. Nickerson, who had been working for Duncan, took charge, and went to one Church, who had charge of the construction work of said canal for the defendant, and told him that the men were afraid they would not

get their money, and that Church told him to go ahead with the work, and that the labor would be paid; that Church was the engineer in charge of the construction, and had been from the 7th day of April, and so continued up until September, and had supervision of the work, and gave instructions as to time checks, and he said if the bank refused to cash time checks to come to him; that Mr. Sweet was the general manager of the defendant company; that after Nickerson took charge he went to Church for an order for provisions, and was referred to Sweet, and Sweet directed the order to be given, and directed that Nickerson go ahead and finish the work, that it could be done cheaper than they could move the camp and do it, and when he asked Church for an order for provisions to finish the work, he asked Mr. Sweet about it, and Sweet directed Church to give Nickerson what he wanted, and said that the labor should be paid for, and had to be paid; that this conversation was with reference to the work that Nickerson was then overseeing; that Nickerson's duties were as foreman of the men, and he kept time and track of everything, and paid the men with checks; that the men employed were paid $2.50 a day; that he kept the books and executed the time checks; that he went over all the work and figured up the amount due each person for work done; that he did the work under the direction of the engineer in charge, who gave him lines, levels and orders what to do; that Church came to the camp again later and told Nickerson to go ahead, and Nickerson called the men about him and told them that Mr. Church said the work would be paid for and Church said for the men to go ahead and do the work, that the work had to be done and the company would not try to beat them; that Church asked Nickerson for the expense account and the work account and took them away with him, and told Nickerson to go ahead and issue time checks; that the time checks involved in this case are a true statement of the work.

It also appears that H. C. Wons was cashier of the respondent bank, and after the bank had cashed some of the time checks he called up Miss Jones at the Blackfoot office of the

appellant and had a conversation with her, and she said the orders for labor would be protected by the company, and that he thereafter cashed such orders, and that other orders were cashed by Mr. Davis, president of the bank, after he had had a conversation with Miss Jones. It further appears that Mr. D. W. Davis, president of the respondent bank, refused to pay time checks given by Duncan, and that he called up the Blackfoot office of the appellant and talked with Miss Jones and related to her that the checks were at the bank and were on the Duncan contract, and Miss Jones told him that the checks for labor would have to be paid, and that the bank took no chance; that Mr. Sweet had told him that whenever there was any doubt about time checks to call up the Blackfoot office and that Miss Jones was in charge of the Blackfoot office, and he had been dealing with that office since July, 1908; that he had previously paid time checks, and the company had redeemed them; that on September 19, 1908, the appellant company wrote the respondent acknowledging the receipt of a statement of time checks issued by A. S. Duncan and paid by the bank, and advised the bank that appellant could not answer the inquiry as to whether the checks drawn by Duncan were good, stating that Duncan had left the company and before leaving had contracted large bills that remained unpaid, and that some of his checks were incorrect and contained many items not properly classified, and that appellant had doubts about their having been issued in good faith, and asked the bank to have the same verified by the affidavit of the laborer receiving the same, and asked that he make a statement of the days he worked and the kind of labor performed, and the price to be paid; these several time checks were offered and received in evidence and are all the same practically except as to the name of the person performing the labor and the dates between which such labor was performed and the amount due. In other respects they were the same, as follows:

"Sept. 5, 1908.
"Am. Falls Pw. Co.
"American Falls, Idaho.
"Due R. W. Martin for labor on High Line Canal for A. S. Duncan for the month of Sept.   $33.00.
"A. S. DUNCAN,
"F. L. N.

"H.

"Signed, 3
"R. W. MARTIN."

We think the facts of this case as detailed above clearly prove that A. S. Duncan was engaged in certain constructive work upon the canal of the appellant; that Duncan abandoned the work and left F. L. Nickerson, who had been working for Duncan, in charge; that the workmen on the canal under Nickerson and Duncan threatened to cease work, and that the engineer of the appellant, who was in general charge of the construction work upon said canal, authorized Nickerson to take charge of the work and to issue time checks to the workmen, and that the appellant would pay the same; that the general manager of the appellant company, Sweet, also authorized Nickerson to purchase provisions and directed that Nickerson finish the work, and that the labor would be paid for; that Nickerson kept the time and track of the labor done and issued the checks after figuring up the amount due each person for work done; that Miss Jones, one of the persons in charge of the office of the appellant company at Blackfoot, and who gave orders for the company, stated that the checks given for labor would have to be paid, and informed the bank, the respondent herein, that it took no chance in paying such time checks; and that the appellant company wrote to the bank with reference to the time checks in controversy to have the same verified by the affidavit of the laborer receiving the same, and that the person receiving the same make a statement of the days of work and kind and price paid, and send such statements to appellant. In other words, these facts show clearly that the labor sued for was performed upon the property of the appellant, that the appellant authorized such

labor to be performed and agreed to pay for the same, and received the full benefit of the labor done. Under such circumstances a clear case is proven without any conflict in the evidence, showing the appellant's liability for the several amounts sued for. We are unable to discover any reason why a liability does not arise out of this state of facts.

Counsel for appellant, however, very strongly urges that the evidence is insufficient in this case, for the reason that it does not show that either Church, Sweet or Miss Jones had any authority from the appellant company to authorize the work sued for, or to agree for the company that such labor would be paid for. It is true that there is no direct evidence to the effect that the appellant company authorized any of these persons to do the particular act which they did do in relation to these time checks, and it is also true that there is no evidence to show that they did not have such authority, or that the act done by each was not fully within the scope of his employment. The fact that they were in charge of certain work for the appellant company, and that they authorized the employment of the labor for which this action is brought upon the said work, and that the company received the benefit of such labor, and in no way repudiated the acts of such persons, or questioned their authority to do the act each did do in relation to the incurring of the indebtedness, are strong circumstances which, taken and considered together, force the conclusion that such persons were the agents of appellant and acted within the scope of their employment. The respondent in its payment of the time checks acted in perfect good faith, and without any knowledge as to any limitations placed by the company upon the authority of such persons acting with reference thereto. In such case we think the appellant company is estopped from denying the authority of Church, Sweet and Jones in doing the things which led up to the issuing and payment of the time checks. (*Eells v. Gray Bros. Crushed Rock Co.*, 13 Cal. App. 33, 108 Pac. 735.)

It is also contended by appellant that the evidence is insufficient because the time checks themselves are not binding

as against the appellant, because they were not issued by the appellant, or on its account. Counsel for appellant, however, overlook the fact that the time checks themselves are mere evidence of the debt, and that the appellant had an opportunity in this case to dispute and contest the amount of the debt of each of the persons to whom such time checks were issued, and was not bound by the time checks alone as to the amount due, and was furnished with a statement of the time checks showing the person who performed the labor and the amount, as requested by the appellant, and there does not appear to have been any evidence on the part of the appellant which contradicts the correctness of any of said time checks or their genuineness.

Counsel for appellant also objects to the sufficiency of the evidence in that the respondent must either show that the time checks were accepted by the appellant after they had been presented to its authorized agent or officers, and thus been advised of what it was doing, or that the respondent would be required to prove the account as any other book account. There is nothing in this contention. The labor was authorized, the time checks were simply evidence that the labor had been performed and the amount due for such labor. These time checks were authorized by the appellant and were cashed by the respondent, and the evidence in this case shows that such labor was performed and amounted to that stated in each specific time check. That was proper proof, especially in view of the fact that the appellant offered nothing to dispute the same or in any way call in question the correctness of said account. Objection is also made that the time checks were not introduced in evidence at the proper time in the trial of the case. They were, however, introduced before the trial was concluded, and the appellant had full opportunity to examine them, and could have called any witness with reference to the correctness of each of the time checks, and the time of their introduction does not affect the sufficiency of the evidence to support the findings.

Counsel also claims that the evidence is insufficient because of the manner in which the time checks were paid. We

apprehend that it is of very little importance how they were paid so that they were paid by the respondent, at the request of the appellant. That the checks were paid, and paid at the request of the appellant, we think the evidence fully establishes. It is also argued that the time checks show upon their face that they were obligations of A. S. Duncan, and not obligations of the appellant. While it is true that such time checks are signed by "A. S. Duncan. F. L. N.," it was clearly shown that they were authorized by the appellant company, and were issued as evidence of debts contracted at the request of appellant and for its benefit, and the fact that they were not issued in the name of the appellant company would not be a reason why the appellant was not liable for their payment, if the appellant authorized the issuing of the same and agreed to pay them.

Appellant also assigns certain errors of law which are urged as grounds for reversal. It is argued that there is a variance between the allegations of the complaint and the evidence, because the time checks do not show on their face to have been issued by appellant. As answer to this contention, the complaint itself clearly shows that the action is not based upon the time checks; that the action is one to recover for labor performed, and that the time checks were issued as evidence of such indebtedness and were issued by Nickerson upon request of the agent of the appellant. It is also contended that the court erred in admitting in evidence certain conversations had between Nickerson, Duncan and the engineer and general manager of the appellant company. If Church and Sweet were the agents of the appellant company, and had charge of the construction work upon appellant's canal, then any statements they made with reference to such work would be binding upon the appellant, and the checks that respondent purchased would be evidences of indebtedness for labor performed upon the authority of Church and Sweet.

Error is also claimed in permitting the witness Davis, president of the respondent bank, to testify that he had paid time checks before he purchased the time checks in controversy in this case, and that the appellant company had redeemed such

time checks. There was no error in permitting this examination; that evidence was competent and proper for the purpose of showing that the appellant company had recognized time checks heretofore issued under circumstances and for purposes similar to the time checks in question, and the evidence that the appellant company recognized such checks as valid was admissible as tending to show that the time checks issued were issued for and on behalf of the appellant company.

Counsel for appellant also contends that the court erred in making the findings in the case for the reason that the complaint alleges two causes of action—one on implied contract, and the other upon an express contract. The complaint alleges the facts generally, and while it alleges facts which show an implied contract to pay for labor done, the complaint positively alleges that the appellant agreed to pay for the same. This is not a statement of two causes of action, but merely a statement of the facts, and the cause of action consists of the contract made by the appellant to pay for labor performed upon its canal at its request. Another answer to this alleged error is that the question was not raised at the trial, and it is too late to make such claim for the first time in this court.

After a careful examination of the entire record we find no error which calls for a reversal of the judgment. The judgment is *affirmed.* Costs awarded in favor of respondent.

Ailshie and Sullivan, JJ., concur.